1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    COREY JEROME ELDER,                      No.  2:16-CV-1925-TLN-DMC-P

12                    Plaintiff,

13         v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14    SILVA, et al.,

15                    Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983. Pending before the Court are Defendants' motion for summary judgement,

19    ECF No. 34, Plaintiff's opposition, ECF No. 36, and response, ECF No. 37, and Defendants'

20    reply, ECF No. 39.

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1

# I. BACKGROUND

A.      **Plaintiff's Allegations**

This action proceeds on Plaintiff's first amended complaint.  See ECF No. 16.
Plaintiff names seven defendants employed at High Desert State Prison: (1) Correctional Officer
(C/O) Silva, (2) C/O Joksch, (3) C/O Whitcome, (4) Correctional Sergeant (Sgt.) Speers, (5) Sgt.
Brackett,[1] (6) Correctional Lieutenant (Lt.) Ramsey, and (7) Lt. Hogan.  See id.

Though Plaintiff's narrative of the facts jumps forward and backward in time, the
following outline of Plaintiff's allegations is arranged chronologically.

July 2014

According to Plaintiff, two weeks after his arrival at High Desert State Prison on
July 8, 2014, Defendant Silva issued plaintiff his personal property on July 22, 2014.  See ECF
No. 16 at 4.  At that time, Defendant Silva informed Plaintiff that a few items were disallowed,
including Plaintiff's posters.  See id.  Plaintiff alleges Defendant Silva told Plaintiff that he had
three days to put enough money in his trust account to have the posters sent home before the
prison disposed of them.  See id.  Plaintiff gathered the funds within three days, but his posters
had been disposed of anyway.  See id.   Plaintiff subsequently filed a grievance against Defendant
Silva for prematurely disposing of his posters.  See id.

September 2014

On September 7, 2014, Plaintiff did not receive lunch and asked Defendant Joksch
if he could retrieve it.  See id. at 5.  Defendant Joksch allegedly responded, "[y]ou like to write up
staff and complain like a little bitch, so fuck your state lunch!"  Id.  Plaintiff filed a grievance
against Defendant Joksch the same day.  See id.

On the following day, September 8, 2014, Defendant Joksch allegedly ordered
Plaintiff: "Pack up your shit your [sic] moving with a gang member. You need to learn a fucking
lesson!"  Id.  Plaintiff asked Defendant Joksch why he was being moved, leading Defendant
Joksch to respond: "I'll show you how we deal with problems up here."  Id.  Defendant Joksch
subsequently reported a rules violation against Plaintiff for "willfully delaying a peace officer by

---

[1]      Defendant Brackett is erroneously named as "Bradett."

1   refusing assigned housing." Id.

2                   October 2014

3                   On October 6, 2014, Defendant Speers interviewed Plaintiff for his first grievance

4   regarding his posters. Id. Plaintiff explained that Defendant Silva gave him three days to fund

5   his trust account and provided Defendant Speers with a property receipt showing Plaintiff never

6   signed nor agreed to donate or destroy his confiscated property. See Id. Defendant Speers

7   allegedly responded multiple times by stating: "Well, my officer fucked up." Id.

8                   On October 17, 2014, Defendant Ramsey interviewed Plaintiff regarding the rule

9   violation report issued by Defendant Joksch. See id. Plaintiff expressed that he believed Joksch's

10  disciplinary action was in retaliation for Plaintiff's complaint against him. See id. Defendant

11  Ramsey ruled against Plaintiff and imposed a penalty of ninety days loss of credit and suspended

12  privileges. See id. at 6. Although not included in the penalties imposed by defendant Ramsey,

13  Plaintiff was denied access to the yard and dayroom, and was confined to his cell for twenty

14  consecutive days. See id. During Plaintiff's confinement, he complained to Defendant

15  Whitcome, who told Plaintiff, "this is not a place for 'whiners' or 'complainers.'" See id. at 5.

16                  November 2014

17                  On November 17, 2014, Correctional Counselor D. Clark interviewed Plaintiff

18  regarding his rules violation appeal. See id. Plaintiff explained that he was wrongly confined to

19  quarters and that the retaliation he experienced made him afraid for his safety. D. Clark allegedly

20  responded to plaintiff by stating: "your [sic] lucky it isn't worse." Id.

21                  February 2015

22                  On February 18, 2015, Defendant Brackett ordered Plaintiff and his cellmate to the

23  showers and seized Plaintiff's legal documents from his cell for a "future search." Id.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

3

The following summarizes Plaintiff's claims by defendant:

Silva        Plaintiff claims Defendant Silva improperly destroyed his property in July 2014, conduct for which Plaintiff filed a grievance.  See id. at 4.

Joksch       Plaintiff claims that he didn't receive a state-provided sack lunch on September 7, 2014, and that, when he asked Defendant Joksch about it, Defendant Joksch said: "You like to write up staff and complain like a little bitch, so fuck your state lunch!"  Id. at 5.  Plaintiff further claims that, the next day, Defendant Joksch gave Plaintiff the following order: "Pack up your shit your [sic] moving with a gang member."  Id.  According to Plaintiff, Defendant Joksch also stated: "You need to learn a fucking lesson!"  Id.  When Plaintiff asked Defendant Joksch why he was suddenly being moved, Defendant Joksch allegedly said: "I'll show you how we deal with 'problems' up here."  Id.  Plaintiff also alleges that, for simply asking why he was being moved, Defendant Joksch issued Plaintiff a rules violation report for willfully delaying a peace officer by refusing  assigned housing.  See id.

Whitcome     Plaintiff claims that, upon attempting to enter the yard and dayroom, he asked Defendant Whitcome about the loss of yard and dayroom privileges assessed by Defendant Ramsey and Defendant Whitcome said: "This is not a place for 'whiners' or 'complainers.'"  Id.  Plaintiff states that he remained "confined to quarters" for 20 consecutive days.  Id.

Speers       Plaintiff states Defendant Speers interviewed him in October 2014 regarding the grievance he filed following Defendant Silva's alleged destruction of his property.  See id. at 4.  According to Plaintiff, after he explained to Defendant Speers what Defendant Silva had done, Defendant Speers responded: "Well, my officer fucked up."  Id. at 4.

Brackett     Plaintiff states that, when he and his cellmate were taken out of their cell and "placed in the shower," Defendant Brackett took Plaintiff's legal materials for a "future search."  Id. at 6.  When Plaintiff asked Defendant Brackett about this, Defendant Brackett allegedly responded: "This is your last 'warning.'"  Id.

Ramsey       Plaintiff alleges that, on October 17, 2014, Defendant Ramsey presided over the hearing on the rules violation report issued by Defendant Joksch for refusing a housing assignment.  See id. at 5.  Plaintiff states that he was found guilty of the rules violation and assessed "90 days loss of credit" and other privileges.  Id. at 5.

Hogan        Plaintiff's first amended complaint contains no allegations relating to Defendant Hogan. See e.g. id.

/ / /

/ / /

4

1        **B.        Procedural History**

2                Plaintiff filed the original complaint against all defendants herein and Warden R.

3    St. Andre on July 21, 2016, alleging multiple constitutional violations.  See ECF No. 1.  On

4    November 15, 2018, the Court granted Plaintiff leave to amend the complaint's non-cognizable

5    claims.  See ECF No. 15.  In that order, the Court identified three potential claims: (1) destruction

6    of property, in violation of the Due Process Clause of the Fourteenth Amendment; (2) retaliation

7    in violation of the First Amendment; and (3) improper search and seizure.  See id.

8                On December 17, 2018, Plaintiff filed his first amended complaint, omitting all

9    claims against St. Andre.  See ECF No. 16.  The Court ordered service on the remaining

10   defendants for various claims including: (1) retaliation, in violation of the First Amendment; and

11   (2) deliberate indifference, in violation of the Eighth Amendment.  See ECF Nos. 17, 19.  On

12   April 29, 2020, Defendants filed their motion for summary judgment.  See ECF No. 34.

13

14                      **II.  STANDARD FOR SUMMARY JUDGEMENT**

15                The Federal Rules of Civil Procedure provide for summary judgment or summary

16   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

17   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

18   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

19   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

20   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

21   the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

22   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

23   moving party

24                      always bears the initial responsibility of informing the district court of the
                        basis for its motion, and identifying those portions of "the pleadings,
25                      depositions, answers to interrogatories, and admissions on file, together
                        with the affidavits, if any," which it believes demonstrate the absence of a
26                      genuine issue of material fact.

27                Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

28   / / /

                                                    5

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

1    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

2    imposed." <u>Anderson</u>, 477 U.S. at 251.

3

4                            **III. THE PARTIES' EVIDENCE**

5            Defendants' motion for summary judgment is supported by the following:

6            DX A        The sworn of declaration H. Cervantez.  <u>See</u> ECF No. 34-3,
7                        pgs. 8-70.

8            DX B        The California Department of Corrections and Rehabilitation
                         (CDCR) Operations Manual excerpt dated January 1, 2014.
9                        <u>See</u> <u>id.</u> at 71-73.

10           DX C        Transcript excerpts of the deposition of Corey Jerome Elder
                         dated January 10, 2020.  <u>See</u> <u>id.</u> at 74-76.

11           DX D        The sworn declaration of S. Barnes.  <u>See</u> <u>id.</u> at 77-87.

12           DX E        Unpublished cases provided to Plaintiff in accordance with the
                         local rules.  <u>See</u> <u>id.</u> at 88-108.
13

14           Plaintiff's opposition to the motion for summary judgment is supported by:

15           Exhibit 1   Plaintiff's comprehensive accommodation chrono form dated
                         September 4, 2009.  <u>See</u> ECF No. 37, pgs. 30-31.
16

17           Exhibit 2   A cell search receipt dated February 18, 2015.  <u>See</u> <u>id.</u> at 38-39.

18           Exhibit 3   Plaintiff's CDCR level of care decision form.  <u>See</u> <u>id.</u> at 40-42.

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

In further support of their motion, Defendants have submitted a Statement of Undisputed Facts (DUF)[2], ECF No. 34-3, pgs. 1-7, and Plaintiff has submitted his responses, see ECF No. 37, pgs.1-12.  The following summarizes these filings:

| Defendants' Statement | Plaintiff's Response |
|---|---|
| 1. Plaintiff, Corey Jerome Elder (F-10489) is a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR). (Defendants' Exhibit A (DX A), Attachment 1, decl. of H. Cervantes and documents from Plaintiff's central file, p. 2-5.) Plaintiff was housed at High Desert State Prison (HDSP) at times material to the matters at issue.<br><br>(DX A-1, p. 2.) | 1. Admit. |
| 2. Defendants are employees of CDCR, and were assigned to HDSP in the following positions: Defendants Hogan and Ramsey were Correctional Lieutenants; Defendants Speers and Brackett were Correctional Sergeants; and Defendants Silva, Joksch, and Whitcome were Correctional Officers at HDSP, and were assigned to HDSP at all times material to the matters at issue.<br><br>(First Amended Compl. at § III.) | 2. Admit. |
| 3. Plaintiff arrived at HDSP on July 8, 2014, as an adverse transfer due an increase in his classification score.<br><br>(DX A-1, p. 2.) | 3. Admit. |
| 4. Plaintiff appeared for his initial classification committee hearing on July 15, 2014, during which time the committee found that Plaintiff was eligible for double-cell housing.<br><br>(DX A, p. 6-7.) | 4. Admit. |

---

[2]     The Court notes that DUF 32 appears to be missing. Also, Plaintiff sometimes refers to himself as "petitioner."

| Defendants' Statement | Plaintiff's Response |
|---|---|
| 5. Following his assignment to C-Facility, Unit 8, cell 132, upper bunk, Plaintiff was issued his property.<br><br>(DX A-1, p. 7.) | 5. Deny. In defendant's [sic] exhibit marked, DXA-010 petitioner signed and dated the property receipt on 7-22-2014. A full two weeks after petitioner had arrived. |
| 6. According to the property receipt, Plaintiff received four boxes of property on July 22, 2014, but he was denied his hair and nail clippers, a red prayer rug, and posters.  Those items were donated because Plaintiff did not have adequate funds in his trust account to send them out.<br><br>(DX A-1, p. 9-10, 19.) | 6. Deny. Again, on defendant's [sic] exhibit marked, DXA-010 there is no signature in the box marked "Inmate Signature" where petitioner was suppose [sic] to have signed. Petitioner's signature is only in the box where he received 4 boxes of his property. |
| 7. On August 12, 2014, Plaintiff submitted a request for interview claiming that he was waiting for some portraits to be sent home.<br><br>(DX A-1, p. 10(a).) | 7. Admit. |
| 8. Plaintiff received a response on August 19, 2014, indicating there was nothing in the computer system showing that Plaintiff had property that was mailed home.<br><br>(DX A-1, p. 10(a).) | 8. Admit. |
| 9. That same day Plaintiff filed a grievance claiming that he was told when his property was received that he could not have his portraits or drawings, and he wanted them sent to his attorney. Plaintiff did not allege that he was told his paintings would be held until he received money from home.  As his requested disposition, Plaintiff again requested that his property be sent to his attorney.<br><br>(DX A-1, p. 11.) | 9. Admit. |

/ / /

/ / /

/ / /

9

| | |
|---|---|
| 10. Plaintiff does not know who donated or destroyed his portraits or drawings. (Defendants' Exhibit C (DX C), deposition transcript of Corey Elder, 22:19-24.) | 10. Deny. Petitioner claims that defendant Silva destroyed/donated his portraits or drawings. |
| 11. On October 6, 2014, Sergeant Speers interviewed Plaintiff regarding his grievance. (DX A-1, p. 19.) | 11. Deny. Petitioner wasn't interviewed on "October 6, 2014" but on October 21, 2014. |
| 12. Sergeant Speers advised Plaintiff that his drawings were confiscated on July 22, 2014, and at that time, Officer Sauder contacted the trust office to determine whether Plaintiff had money in his account to send the property out. Because Plaintiff did not have funds in his trust account, his property was donated in accordance with the Department Operations Manual (DOM), section 54030.12.2. (DX A-1, p. 19.) | 12. Deny. In the defendant's [sic] exhibit "DXA-019" is an appeal in which it was alleged that Sergeant Speers "told you at the time the drawings were confiscated; you did not have the available funds to mail them out." Petitioner only dealt with correctional officer Silva when issued his property. Petitioner only met Speers when interviewed 2 months after receiving his property. |
| 13. DOM section 54030.12.2 states, "Unauthorized inmate personal property, including that which is altered, exceeds volume limitations, or is beyond repair, shall be disposed of in accordance with the provisions of this Section. The institution shall not store unauthorized inmate property except as provided for inmates placed in ASU as provided for in Section 54030.13.2." That section goes on to state, "Inmates shall sign the CDC Form 1083 indicating their choice of disposition and agreement to the method for disposing of their property.  If the inmate makes no selection or has insufficient funds, staff shall document that fact and determine the method of disposition. Unauthorized personal property shall be disposed of as follows: Mail the item to an address provided by the inmate via United States Postal Service (USPS) or common carrier at the inmate's expense. This option is not available for inmates with insufficient funds in their trust (13 continued on next page) | 13. Admit. |

| | |
|---|---|
| (13 continued from previous page)<br><br>account. Return the item to the sender via USPS or common carrier at the inmate's expense. This option is not available for inmates with insufficient funds in their trust account. [sic]<br><br>(Defendants' Exhibit B (DX B)) | |
| 14. At the time that Plaintiff's property was disallowed, Plaintiff did not have funds in his trust account, therefore, his property was donated.<br><br>(DX A-1, p. 19.) | 14. Deny. In direct violation of the disposition in Department Operations Manual 2014, section 54030.12., petitioner never signed or agreed to have his property donated or destroyed as evidence by the property receipt. |
| 15. Plaintiff's grievance was denied at the first level of review by Associate Warden Zumpano on October 21, 2014.<br><br>(DX A-1, p. 20.) | 15. Admit. |
| 16. Dissatisfied with the first level response, Plaintiff submitted his grievance to the second level of review on October 27, 2014, claiming that his property was not contraband and should not have been confiscated. Plaintiff also claimed that unnamed officers failed to comply with procedures. For the first time, Plaintiff alleged that Officer Silva had informed Plaintiff that he had until July 25, 2014, to get money sent into his trust account, and the property would be held until that date.<br><br>Plaintiff claimed that when he mentioned this during his interview, Sergeant Speers stated, "oh well, my officer fucked up."<br><br>(DX A-1, p. 13-14.) | 16. Admit. |

/ / /

/ / /

/ / /

/ / /

11

| | |
|---|---|
| 17. Plaintiff was again interviewed regarding his property on November 22, 2014, this time by Lieutenant Hogan. Hogan also interviewed Sergeant Speers and Officer Silva. Lieutenant Hogan advised Plaintiff that his drawings were confiscated because they were on oversized paper, which was not allowed at HDSP.<br><br>(DX A-1, p. 21-22.) | 17. Deny. In addition to being interviewed by Lieutenant Hogan, plaintiff was asked did he have anything that he wanted to add. Plaintiff indeed said that he wanted to add some things. Plaintiff went on to explain that he was being harassed, intimidated, and retaliated against. |
| 18. Plaintiff's grievance was denied at the second level of review by Chief Deputy Warden St. Andre on November 24, 2014. Plaintiff's grievance was later denied at the Director's level of review.<br><br>(DX A-1, p. 22-23.) | 18. Admit. |
| 19. Plaintiff filed another grievance on September 7, 2014, this time claiming that second watch correctional staff ran out of sack lunches, but promised to get Plaintiff a lunch before the shift ended. Plaintiff also claimed that when he complained to Officer Joksch during third watch, Joksch was disrespectful, stating "so what am I supposed to do about your lunch? I don't give a fuck about your lunch." Plaintiff requested that Officer Joksch be reprimanded.<br><br>(DX A-1, p. 25-26.) | 19. Admit. |
| 20. Plaintiff withdrew his grievance on September 19, 2014, advising that housing unit officers had provided Plaintiff with his sack lunch on September 7, 2014.<br><br>(DX A-1, p. 27.) | 20. Deny. Petitioner withdrew his grievance with the agreement that the harassment, intimidation, and retaliation would stop. Which it didn't, but only worsened . . . [sic] |
| 21. On September 8, 2014, Officer Joksch issued Plaintiff a rules violation for delaying a peace officer when Plaintiff refused to accept a cell partner.<br><br>(DX A-1, p. 28.) | 21. Deny. Petitioner was issued a rules violation report just one day after filing the grievance against officer Joksch. Petitioner contended that he never refused a cell partner. |

/ / /

12

| | |
|---|---|
| 22. Officer Joksch noted that the inmate with whom Plaintiff was to be housed was evaluated and deemed compatible, and there were no known factors that prevented the two inmates from being housed together. Joksch ordered Plaintiff to move into a new cell with the inmate, but he refused to do so. Plaintiff then produced an outdated accommodation chrono dated September 9, 2009, claiming that he needed a lower bunk. Officer Joksch went to the clinic to get Plaintiff's most recent accommodation chrono, which noted that Plaintiff did not require any accommodations.<br><br>(DX A-1, p. 28.) | 22. Deny. Petitioner wrote a staff complaint/grievance on September 7, 2014. Then just the very next day on September 8, 2014 petitioner was told to move. Petitioner only asked where he was moving and if the other inmate could possibly move with petitioner. Petitioner produced a permanent lower bunk that he received in 2009 that was never canceled or rescinded.<br><br>(Exhibit 1) |
| 23. In authoring the rules violation report, Officer Joksch noted that Plaintiff had refused to accept two other cell partners on September 7, 2014.<br><br>(DX A-1, p. 30.) | 23. Deny. There is no documentation that petitioner ever refused a cell partner. This allegation was only made in Officer Joksch's rules violation report authored one day after petitioner wrote the staff complaint/grievance against Officer Joksch. |
| 24. Plaintiff's disciplinary hearing on the rules violation was held on October 17, 2014. Lieutenant Ramsey acted and the Senior Hearing Officer, advising Plaintiff of the charges against him.<br><br>(DX A-1, p. 28.) | 24. Admit. |
| 25. Plaintiff pled not guilty to the charge of willfully delaying a peace officer by refusing assigned housing, stating, "I am a non-affiliated inmate and they were trying to house me on the upper tier with a gang member. Also, I have a lower bunk/lower tier chrono."<br><br>(DX A-1, p. 32.) | 25. Admit. |
| 26. During the hearing, Lieutenant Ramsey noted that Plaintiff did not meet the criteria for the assignment of an investigative employee (IE) to assist Plaintiff. Ramsey also noted that all time constraints had been met, and Plaintiff had not requested witnesses.<br><br>(DX A-1, p. 31-32.) | 26. Deny. Petitioner did in fact request witnesses and that other evidence be admitted. |

13

| | |
|---|---|
| 27. Lieutenant Ramsey found Plaintiff guilty of the charge against him based on a preponderance of the evidence.<br><br>Lieutenant Ramsey considered the rules violation report authored by Officer Joksch, and that Plaintiff had presented an outdated accommodation chrono that was no longer valid. Lieutenant Ramsey also considered Plaintiff's level of mental health care, even though it was determined that Plaintiff's mental health was not a factor in refusing a cell partner. Finally, Lieutenant Ramsey noted that all of the cell partners offered to Plaintiff were designated racially eligible, as was Plaintiff.<br><br>(DX A-1, p. 32-34.) | 27. Deny. As noted in petitioners [sic] appeal, DXA-038, 039, there was no other evidence offered against petitioner other than Officer Joksch's word.<br><br>Petitioner explained that he did in fact end up accepting a cell mate. Petitioner also explained that he has been coming to the California Department of Corrections since 1992 and has never refused a cell mate [sic] and that this was just clearly a retaliatory act against petitioner. |
| 28. Because it was Plaintiff's first rules violation for refusing to accept a cell partner, Defendant Ramsey assessed Plaintiff ninety days loss of credits and privileges, including canteen, telephone, vendor packages, and personal property.<br><br>(DX A-1, p. 34.) | 28. Admit. |
| 29. On November 5, 2014, Plaintiff submitted a grievance, challenging the finding of guilt. Plaintiff claimed he was denied an investigative employee, and witnesses at the hearing. Plaintiff also claimed that Lieutenant Ramsey refused to provide him the ability to submit documents that would show Plaintiff that the rules violation was retaliatory.<br><br>(DX A-1, p. 38-39.) | 29. Admit. |
| 30. The grievance was denied at the second level of review on December 17, 2014, by Acting Chief Deputy Warden St. Andre, who found that Plaintiff had received all of the process he was due.<br><br>(DX A-1, p. 42-44.) | 30. Admit. |

/ / /

/ / /

14

| | |
|---|---|
| 31. On December 4, 2014, Plaintiff filed another grievance, this time complaining that he was being denied access to dayroom and yard, even though that was not part of the penalty imposed by Lieutenant Ramsey after Plaintiff was found guilty. Plaintiff wrote, "from October 17, 2014, the date of the 115 hearing when punishment was imposed, until November 6, 2014, petitioner was in addition to the punishments already imposed Plaintiff was confined to quarters and not permitted to go to the dayroom or to yard."<br><br>Plaintiff claimed that once he showed Officer Whitcome the disciplinary findings that listed the privileges Plaintiff was denied, Plaintiff was allowed to participate in dayroom and yard.<br><br>(DX A- 1, p. 39, 48-49.) | 31. Deny. Petitioner was written a rules violation, found guilty, and prescribed specific punishment. In addition to the punishment imposed, petitioner was confined to quarter for three weeks. On October 22, and October 23, 2014, petitioner attempted to go to the exercise yard and was told by Officer Whitcome that I was confined to quarters until January 15, 2015. Petitioner then stated that it was impossible for petitioner to be confined to quarters for 2 months with no access to the dayroom, yard, or showers. Officer Whitcome's only response was, "This is what you get for 'whining' and complaining.' You were warned." It wasn't until November 6, 2014, the following month that petitioner received a copy of the final disposition of the rules violation report that officer Whitcome conceded. Petitioner showed Officer Whitcome the final copy which listed no confining to quarters. Then and only then was petitioner allowed yard. |
| 33. Plaintiff's grievance was rejected on January 5, 2014, because Plaintiff failed to provide the appropriate attachments.<br><br>(DX A-1, p. 59.) | 33. Deny. Petitioner's appeal was inappropriately screened out against petitioner's rights |
| 34. Plaintiff resubmitted the grievance, which was later denied as untimely.<br><br>(DX A-1, p. 60.) | 34. Admit. |
| 35. Plaintiff has never filed a grievance claiming that Lieutenant Brackett searched Plaintiff's cell, or confiscated Plaintiff's legal property.<br><br>(Defendants' Exhibit D (DX D), declaration of S. Barnes, ¶ 11.) | 35. Deny. On February 18, 2015 petitioner and his cellmate was [sic] escorted and placed in the shower.<br><br>Only petitioner's legal property was taken a 'future search.' In what had been a series of retaliatory actions against petitioner, petitioner was 'warned' by Lieutenant Brackett, "this is your last warning.'" Petitioner took this to mean that further harassment, harm, injury, or death was imminent. And after a series of threats and warnings and out of pure fear for petitioner's<br><br>(35 continued on next page) |

15

| | (35 continued from previous page) |
|---|---|
| | safety, petitioner chose not to further write any more grievances. On 5-19-2015 petitioner's mental status was increased from CCCMS level of care to E.O.P level of care where petitioner had to undergo significantly more mental health treatment because of the intimidation, retaliation, and harassment that he experienced at High Desert State Prison.<br><br>(Exhibits 2 and 3) |

## IV. DISCUSSION

In their moving papers, Defendants raise the following arguments related to Plaintiff's retaliation claims: (1) Plaintiff cannot succeed on the merits against Defendants Silva, Speers, Ramsey, and Whitcome; (2) Plaintiff has failed to exhaust his administrative remedies as to Defendants Brackett, Whitcome, and Joksch; and (3) Defendants are entitled to qualified immunity. See ECF No. 34-1. Defendants also argue that judgment should be rendered in defendant Hogan's favor because the first amended complaint contains no allegations against him. See id.

Though the Court found the first amended complaint states a cognizable Eighth Amendment claim against Defendant Joksch, Defendants raise no arguments as to such claim. See e.g. id. The Court will, therefore, recommend this action proceed against defendant Joksch on Plaintiff's Eighth Amendment claim.[3] The Court also agrees with Defendants that the first

---

[3]     Plaintiff's Eighth Amendment claim stems from allegations related to his cell move on September 8, 2014. Plaintiff claims he was ordered to move to a cell "with a gang member" in order to "learn a fucking lesson." ECF No. 16, pg. 5. These references reasonably suggest Plaintiff feared for his safety as a result of the order, specifically that the "lesson" would be in the form of violence perpetrated by a "gang member." It also suggests the order was based, at least in part, on an intention to move Plaintiff to a cell with a known gang member who could deliver that lesson, further implicating a safety concern. In its order determining Plaintiff's first amended complaint is appropriate for service, the Court identified an Eighth Amendment claim related to medical care. See ECF No. 17, pg. 2. Though the Court has recognized an Eighth Amendment claim since the inception of this lawsuit, Defendants very specifically move for summary judgment "on the gounds that Plaintiff cannot meet the elements of a retaliation claim as to any of the named Defendants." ECF No. 34-1, pg. 7.

amended complaint contains no allegations as against Defendant Hogan and will recommend this defendant be dismissed.

The Court's analysis below is limited to Defendants' specific arguments concerning the merits of Plaintiff's First Amendment retaliation claims, exhaustion, and qualified immunity.  Given the complexity of the interaction of the various arguments in terms of whether Defendants' arguments are dispositive overall as to any defendant on Plaintiff's retaliation claims, the Court provides the following chart showing which arguments are raised as to which defendants:

ARGUMENTS RELATED TO RETALIATION CLAIMS

|  | Cannot Establish Merits of Claim | Claim is Unexhausted | Qualified Immunity |
|---|---|---|---|
| Silva | X |  | X |
| Joksch |  | X[4] | X |
| Whitcome | X | X | X |
| Speers | X |  | X |
| Brackett |  | X | X |
| Ramsey | X |  | X |

A.    **The Merits**

In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

---

[4]    Defendants argue Plaintiff's retaliation claim is unexhausted only insofar as it relates to denial of a sack lunch.  To the extent, as discussed below, Plaintiff's allegations give rise to additional retaliation claims against Defendant Joksch, Defendants do not argue such claims are unexhausted.

1   must also show that the exercise of First Amendment rights was chilled, though not necessarily

2   silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

3   2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

4   plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

5   took adverse action against the prisoner; (2) the adverse action was taken because the prisoner

6   engaged in protected conduct; (3) the adverse action chilled the prisoner's First Amendment

7   rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408

8   F.3d at 568.

9             According to Defendants, the following retaliation claims are at issue:

10             Plaintiff alleges that Defendants engaged in conduct in retaliation
for Plaintiff submitting grievances. (ECF No. 16.) Specifically, Plaintiff
11   claims that: (1) Defendant Silva destroyed Plaintiff's drawings in
retaliation for filing a grievance against him; (2) Defendant Speers failed
12   to provide Plaintiff compensation for the artwork that was destroyed; (3)
Defendant Joksch refused to provide Plaintiff with a state-issued lunch,
13   and issued Plaintiff a rules violation for failing to accept a gang member
as a cell partner; (4) Plaintiff told Defendant Ramsey that Correctional
14   Officers were retaliating against him for filing a grievance, but Ramsey
ignored Plaintiff's complaints and found Plaintiff guilty of the rules
15   violation; (5) Plaintiff complained to Officer Whitcome about the
restrictions and was told "this isn't the place for whiners or complainers;"
16   and (6) Defendant Brackett searched Plaintiff's cell as a warning to stop
filing grievance. (Id.).
17

18   ECF No. 34-1, pgs. 10-11.

19   Defendants offer the following specific arguments on the merits of these claims:

20   1.     Plaintiff's retaliation claim against defendant Silva fails because the
alleged retaliatory conduct occurred before plaintiff filed a grievance
21   and because plaintiff only speculates as to the alleged retaliatory conduct.
See id. at 13.

22

23   2.     Plaintiff's retaliation claim against defendant Speers fails because he took
no adverse action against plaintiff and because plaintiff has not alleged an
actual injury.  See id. at 13, 15.

24

25   3.     Plaintiff's retaliation claim against defendant Ramsey fails because there is
no evidence Ramsey acted with retaliatory motive.  See id. at 16.

26   4.     Plaintiff's retaliation claim against defendant Whitcome fails because he
took no adverse action against plaintiff.  See id. at 17.

27

28   / / /

1          Defendants present no specific arguments related to the merits of Plaintiff's

2     retaliation claims against Defendants Joksch and Brackett.  See e.g. id.  Defendants Joksch and

3     Brackett, therefore, are only entitled to judgment as a matter of law on Plaintiff's retaliation

4     claims against them to the extent the claims are not exhausted or they are entitled to qualified

5     immunity, as further discussed below.[5]  The Court's further analysis of the merits of Plaintiff's

6     retaliation claims is limited to the four defendants as to whom arguments to the law and facts are

7     raised – Defendants Silva, Speers, Ramsey, and Whitcome.

8                    1.       Defendant Silva

9          According to Defendants, Plaintiff's retaliation claim against Defendant Silva

10    fails because: (1) the alleged adverse action occurred before the alleged protected activity; and

11    (2) Plaintiff only speculates that Defendant Silva retaliated.  See ECF No .34-1, pg. 13.

12    Defendants base these contentions on the following description of Plaintiff's allegations against

13    Defendant Silva:

14               Plaintiff alleges that Defendant Silva intentionally destroyed
                 Plaintiff's drawings in retaliation for Plaintiff filing a grievance against
15               Silva. Specifically, Plaintiff states:

16               Upon receiving my property, I was told that I couldn't have
                 my portraits/drawings. Because I couldn't have my
17               portraits/drawings, I was told by Officer Silva that I would
                 be given 3 days to have money put in my inmate trust
18               account to have the portraits/drawings sent home. So I had
                 the money sent to my account and notified C/O Silva that
19               the money had arrived as we agreed upon. Shortly
                 thereafter I was told my drawings were destroyed. I
20               subsequently and timely appealed. (ECF No. 13 at p. 4.)[6]

21               Id.

22    / / /

23    / / /

24    / / /

25    / / /

26

27    _____
         [5]      Again, the Court notes that Defendants' exhaustion argument as to Defendant
      Joksch is limited to Plaintiff's claim relating to denial of a sack lunch.
28       [6]      Defendants' citation to ECF No. 13 is presumed to be an error as the first amended
      complaint is filed at ECF No. 16.

a.      Timing

Defendants contend Plaintiff's retaliation claim against Defendant Silva fails due to a timing problem.  Specifically, Defendants argue the alleged adverse action occurred before the alleged protected activity and, therefore, Plaintiff cannot establish the adverse action occurred because of the protected activity.  See ECF No. 34-1, pg. 13.  According to Defendants:

> This alleged adverse action cannot be the basis of Plaintiff's retaliation claim against Defendant Silva because the adverse action preceded Plaintiff's protected conduct. Plaintiff's drawings were donated on July 22, 2014 (DUF 6), but Plaintiff did not file a grievance regarding his drawings until August 12, 2014. (DUF 9.) Thus, Plaintiff's litigation activities cannot be a substantial or motivating factor for the alleged disposal of his property.

ECF No. 34-1, pg. 13.

The Court agrees.  As summarized above, Plaintiff's claim against Defendant Silva is quite limited.  Specifically, Plaintiff claims that Defendant Silva improperly destroyed his property in July 2014, conduct for which Plaintiff filed a grievance.  See ECF No. 16, pg. 4; see also DX A (Cervantes declaration).  Plaintiff does not allege or produce evidence of any protected activity of which Defendant Silva was aware which took place before the destruction of his property in July 2014.  Here, the only alleged protected activity – the filing of a grievance against Defendant Silva – occurred after Plaintiff's property was destroyed.   Absent Plaintiff in engaging in some protected activity prior to an adverse action, and absent Defendant Silva's knowledge of such activity, Plaintiff cannot establish that Defendant Silva's conduct was motivated by the protected activity.  As such, Plaintiff cannot establish an essential element of his retaliation claim against Defendant Silva.

b.      Speculation

Even assuming some adverse action occurred after a protected activity, Defendants also contend Plaintiff's retaliation claim against Silva fails because Plaintiff only speculates that retaliation occurred.  See ECF No. 34-1, pg. 13.  Defendants argue:

> Plaintiff's retaliation claim against Defendant Silva also fails because Plaintiff merely speculates that Defendant Silva destroyed the drawings, and that he did so intentionally. But Plaintiff has no personal knowledge concerning this issue, and has no evidence to support his beliefs. (DUF 10.) "[M]ere speculation that defendants acted out of

20

1  retaliation is not sufficient. "*Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir.
2  2014.) For both reasons, timing and speculation, Plaintiff's retaliation
   claim against Defendant Silva fails.

3  ECF No. 34-1, pg. 13.

4  Though the Court need not reach this argument because, as discussed above,

5  Plaintiff cannot establish a necessary element of his retaliation claim against Defendant Silva, the

6  Court nonetheless finds this argument persuasive as well.  Plaintiff does not specifically allege

7  that Defendant Silva destroyed his property, <u>see e.g.</u> ECF No. 16, and Plaintiff admitted at his

8  deposition that he has no evidence to show Defendant Silva destroyed his property, <u>see</u> DX C

9  (transcript of Plaintiff's deposition).

10  2.    Defendant Speers

11  Defendants argue Plaintiff cannot prevail on his retaliation claims against

12  Defendant Speers because Defendant Speers took no adverse action against Plaintiff.  <u>See</u> ECF

13  No. 34-1, pgs. 13-15.  The Court agrees.

14  As with Defendant Silva, Plaintiff's allegations against Defendant Speers are

15  limited.  According to Plaintiff, Defendant Speers interviewed him in October 2014 regarding the

16  grievance he filed against Defendant Silva following the destruction of his property.  <u>See</u> ECF

17  No. 16, pg. 4.  Plaintiff further contends that, after he explained what Defendant Silva had done,

18  Defendant Speers responded: "Well, my officer fucked up."  <u>Id.</u>  These allegations fail to state a

19  claim for retaliation against Defendant Speers because Plaintiff does not allege an adverse action.

20  <u>See Diaz v. Sisto</u>, 2010 WL 624618, at *8 (E. Dist. Cal. 2010); <u>see also</u> <u>Wright v. Shannon</u>, 2010

21  WL 445203 (E. Dist. Cal. 2010).  Simply interviewing Plaintiff in relation to his grievance is not

22  necessarily adverse.  Moreover, it serves a legitimate penological interest.

23  3.    Defendant Ramsey

24  Defendants argue Plaintiff cannot prevail on his retaliation claim against defendant

25  Ramsey because Plaintiff has not alleged that Defendant Ramsey took adverse action as a result

26  of Plaintiff engaging in a protected activity.  Defendant also contends Defendant Ramsey's

27  conduct served a legitimate penological interest.  <u>See</u> ECF No. 34-1, pgs. 15-17.  The Court

28  agrees.

1      Plaintiff alleges Defendant Ramsey presided over the hearing on the rules violation

2  report issued by Defendant Joksch for refusing a housing assignment.  See ECF No. 16, pgs. 5.

3  Plaintiff claims that, during the hearing, he told Defendant Ramsey that he believed the rules

4  violation report had been issued in retaliation.  See id.  According to Plaintiff, he was found guilty

5  and assessed a loss of credits as well as a loss of other privileges.  See id.

6      While these allegations may suggest that Defendant's Ramsey's guilty finding

7  could have been a result of his desire to punish Plaintiff for having filed grievances against other

8  prison staff, the undisputed evidence shows otherwise.  At DX A, Defendants provide the report

9  of the rules violation hearing conducted by Defendant Ramsey on October 17, 2014.  See ECF

10  No. 34-3, pgs. 40-43.  The report documents Plaintiff's plea and statement.  See id.  According to

11  the report, Plaintiff pleaded not guilty and stated: "I am a Non-Affiliated Inmate and they were

12  trying to cell me on the upper tier with a gang member; Also, I have a lower bunk/lower tier

13  chrono."  Id. at 41.  There is no evidence Plaintiff ever informed Defendant Ramsey the rules

14  violation report itself was retaliatory.

15      The Court finds Defendants have met their initial burden on summary judgment as

16  to Plaintiff's retaliation claim against Defendant Ramsey.  The burden shifts to Plaintiff to

17  demonstrate the existence of a genuine dispute of material fact.  In this regard, the Court notes

18  that Plaintiff's response to Defendants' statement of undisputed facts does not indicate he ever

19  reported to Defendant Ramsey alleged retaliation as the motive for the rules violation report

20  issued by Defendant Joksch.  Instead, Plaintiff denies Defendants' assertions that Plaintiff did not

21  ask for witnesses at the hearing and that the decision was based on a preponderance of the

22  evidence.  See ECF No. 37, pgs. 9-10 (Plaintiff's response to Defendants' statement of

23  undisputed facts).  Plaintiff has not provided any evidence to support his contention that he

24  requested but was denied witnesses.  In any event, whether Plaintiff asked for witnesses is not

25  material to showing Defendant Ramsey's motivations.

26      There is simply no evidence to establish that Defendant Ramsey knew that the

27  rules violation report had been improperly written and that Defendant Ramsey nonetheless ruled

28  against Plaintiff out of a desire to retaliate against Plaintiff.

1              4.      Defendant Whitcome

2              Defendants contend that Plaintiff's retaliation claim against Defendant Whitcome

3      fails because the evidence shows that Defendant Whitcome did not take any adverse action

4      against Plaintiff.  According to Defendants:

5                      Plaintiff's retaliation claim against Defendant Whitcome fails
                       because the claim is belied by the words in Plaintiff's grievance.
6                      According to the grievance Plaintiff filed contesting the disciplinary
                       hearing, Plaintiff states, "from October 17, 2014, the date of the 115
7                      hearing when punishment was imposed, until November 6, 2014,
                       petitioner was in addition to the punishments already imposed Plaintiff
8                      was confined to quarters and not permitted to go to the dayroom or to
                       yard." (DUF 31.) Plaintiff then adds that when he showed Defendant
9                      Whitcome the error, it was corrected. (DUF 32.)
                               Plaintiff's claim against Defendant Whitcome fails because
10                     Plaintiff has not shown that Defendant Whitcome's actions were adverse
                       to him. Just the opposite is true. Whitcome helped Plaintiff get his
11                     privileges of yard and dayroom reinstated. Accordingly, the claims against
                       Officer Whitcome should be dismissed.
12
                       ECF No. 34-1, pg. 17.
13

14             Plaintiff alleges he asked Defendant Whitcome about the loss of yard and dayroom

15     privileges and that Defendant Whitcome responded: "This is not a place for 'whiners' or

16     'complainers.'"  See ECF No. 16, pg. 5.  Plaintiff further alleges that he remained confined to his

17     cell for 20 consecutive days.  See id.   The issue is whether Defendant Whitcome confined

18     Plaintiff to quarters for 20 days in retaliation for "whining" and "complaining" about prison staff.

19             In his inmate appeal of Defendant Ramsey's guilty finding, Plaintiff stated that he

20     was told by Defendant Whitcome on October 22, 2014, and October 23, 2014, that he "was

21     confined to quarters until January 15, 2015."  See ECF No. 34-3, pg. 58 (DX A).  Plaintiff also

22     stated that the loss of yard and dayroom privileges was not imposed as a result of Defendant

23     Ramsey's guilty finding.  See id.  This is corroborated by Defendant Ramsey's hearing report

24     which details the final disposition as a loss of "canteen, appliances, vendor packages, telephone

25     privileges and personal property for ninety (90) days."  Id. at 66 (DX A). Whether, as Defendants

26     contend, Defendant Whitcome eventually corrected the issue by restoring yard and dayroom

27     privileges does not prove that the loss of these privileges was not improperly enforced by

28     Defendant Whitcome in the first instance in retaliation for Plaintiff being a "complainer" and

1   "whiner."

2           Based on the foregoing, the Court finds that Defendants have not met their initial

3   burden of establishing the non-existence of a genuine dispute on the issue of Defendant

4   Whitcome's allegedly retaliatory conduct, specifically confining Plaintiff to his cell for 20 days

5   despite such confinement not being part of the punishment imposed by Defendant Ramsey on the

6   rules violation finding.[7]

7         **B.**    **Exhaustion**

8           Under the Prison Litigation Reform Act (PLRA), prisoners seeking relief under

9   § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C.

10   § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner,

11   532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because

12   exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved

13   by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311

14   F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in

15   Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or

16   demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense

17   which must be pleaded and proved by the defendants; (2) an individual named as a defendant

18   does not necessarily need to be named in the grievance process for exhaustion to be considered

19   adequate because the applicable procedural rules that a prisoner must follow are defined by the

20   particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of

21   the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears

22   burden of showing non-exhaustion in first instance.  See Albino v. Baca, 747 F.3d 1162, 1172

23   (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was

24   not available, for example because it was thwarted, prolonged, or inadequate.  See id.

25   / / /

26   / / /

27            [7]    Defendants' contentions that Plaintiff's retaliation claim against Defendant

28   Whitcome is unexhausted and that Defendant Whitcome is entitled to qualified immunity on the
claim are discussed below.

1    The Supreme Court held in <u>Woodford v. Ngo</u> that, in order to exhaust

2  administrative remedies, the prisoner must comply with all of the prison system's procedural

3  rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

4  exhaustion requires compliance with "deadlines and other critical procedural rules."  <u>Id.</u> at 90.

5  Partial compliance is not enough.  <u>See id.</u>  Substantively, the prisoner must submit a grievance

6  which affords prison officials a full and fair opportunity to address the prisoner's claims.  <u>See id.</u>

7  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

8  quantity of prisoner suits "because some prisoners are successful in the administrative process,

9  and others are persuaded by the proceedings not to file an action in federal court."  <u>Id.</u> at 94.

10    A prisoner in California satisfies the administrative exhaustion requirement by

11  following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

12  Regulations.  In California, prisoners "may appeal any policy, decision, action, condition, or

13  omission by the department or its staff that the inmate . . . can demonstrate as having a material

14  adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

15  The prisoner must submit their appeal on the proper form, and is required to identify the staff

16  member(s) involved as well as describing their involvement in the issue.  <u>See</u> Cal. Code Regs. tit.

17  15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.

18  <u>See</u> Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level,

19  which is also referred to as the director's level, is not appealable and concludes a prisoner's

20  departmental administrative remedy.  <u>See id.</u>  Departmental appeals coordinators may reject a

21  prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

22  appeals, use of improper language, failure to attach supporting documents, and failure to follow

23  proper procedures.  <u>See</u> Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the

24  prisoner is to be provided clear instructions how to cure the defects therein.  <u>See</u> Cal. Code Regs.

25  tit. 15, §§ 3084.5(b), 3084.6(a).  Group appeals are permitted on the proper form with each

26  prisoner clearly identified and signed by each member of the group.  <u>See</u> Cal. Code Regs. tit 15,

27  § 3084.2(h).

28  / / /

1      According to Defendants:

2          On the face of Plaintiff's First Amended Complaint, he acknowledges
       that an administrative grievance process was available to him. (ECF No. 16 at
3      2.) He also alleges that he exhausted all available administrative remedies.
       (*Id.*) But the evidence shows that Plaintiff withdrew his grievance regarding
4      Defendant Joksch's failure to provide him with a sack lunch. (DUF 20.)
       Plaintiff has never filed a grievance regarding his claims against Defendant
5      Brackett, and his grievance against Defendant Whitcome was rejected as
       untimely. (DUF 31-35.)
6
       ECF No. 34-1, pg. 19.
7

8          At the outset, the Court observes that Defendants' motion is somewhat confusing

9   as to exhaustion, specifically as to which defendants the failure to exhaust is asserted.  In the

10  heading to this section of their moving point and authorities, Defendants state: "Plaintiff's claims

11  against Defendants Brackett and Whitcome fail because Plaintiff did not exhaust his

12  administrative remedies regarding these claims before filing suit."  ECF No. 34-1, pg. 18.  In this

13  section, however, Defendants raise arguments related to Defendant Jocsch's alleged denial of a

14  sack lunch in addition to arguments related to Defendants Brackett in Whitcome.[8]  In their reply

15  brief, Defendants for the first time raise exhaustion argument concerning Defendants Silva and

16  Speers.  See ECF No. 39, pgs. 3-4.  Defendants state in their reply: "Defendants Silva, Speers,

17  Joksch, Whicome, and Brackett are therefore entitled to summary judgment because Plaintiff

18  never submitted an appeal through the final level of review regarding any claims of [retaliation]

19  against these Defendants before initiating this action."  Id. at 4.

20      Because Defendants did not raise the issue of exhaustion as to Defendants Silva or

21  Speers in their moving papers, the Court does not address the arguments raised for the first time

22  in a reply brief to which Plaintiff had no opportunity to respond.  Given that, as discussed above,

23  the Court finds that Plaintiff's retaliation claims fail on the merits as against Defendants Silva and

24  Speers, no prejudice results to Defendants.  The Court's analysis below is focused on the

25  arguments raised in the moving papers as to Defendants Joksch, Whitcome, and Brackett.

26  / / /

27

28      [8]      Defendants raise no exhaustion argument as to Plaintiff's claim that Defendant
    Joksch retaliated against him by ordering a cell move on September 8, 2014.

1           1.      Defendant Joksch

2      Defendants contend:

3           Plaintiff claims that he was denied a sack lunch, and when he
complained to Defendant Joksch, he was rebuffed, Joksch stating, "[y]ou

4 like to write up staff and complain like a little bitch, so fuck your state
lunch." (ECF No. 16 at 5.) Plaintiff submitted a grievance complaining

5 he was denied a lunch by second watch staff. (DUF 19.) While the
grievance alleges that Joksch was unprofessional in dealing with Plaintiff,

6 there is nothing in the grievance alleging that Joksch's actions were
retaliatory in nature, or in any way based on Plaintiff filing a grievance.

7 (DUF 19.)
          Plaintiff later withdrew the grievance, advising that the lunch had

8 been provided "by housing unit officers later in the day." (DUF 20.). . . .

9                    * * *

10           In this case, Plaintiff withdrew the grievance after receiving his
lunch. Plaintiff has never alleged that he withdrew his grievance due to

11 intimidation by Defendant Joksch or any other officer. Thus, Plaintiff did
not exhaust his administrative remedies before filing suit as required by

12 the PLRA, and his claim against Defendant Joksch should be dismissed.

13      ECF No. 34-1, pgs. 19-20.

14      Defendants' argument is persuasive. Plaintiff admits that, on September 19, 2014,

15 he withdrew his grievance concerning denial of a sack lunch on September 7, 2014, because he

16 was provided a sack lunch later that day. See ECF No. 37, pg. 7. Plaintiff's retaliation claim

17 against Defendant Joksch based on the denial of a sack lunch on September 7, 2014, is

18 unexhausted.

19           2.      Defendant Whitcome

20      Defendants contend:

21           Plaintiff appears to allege that Defendant Whitcome retaliated
against him for filing a grievance against Officer Joksch. However, the

22 grievance Plaintiff filed against Defendant Whitcome was never
processed, as it was rejected by the Appeals Coordinator, first for failure

23 to attach the appropriate paperwork, and later as untimely. (DUF 33-34.)
Plaintiff failed to comply with the relevant grievance rules and therefore

24 failed to exhaust. . . .

25      ECF No. 34-1, pgs. 20-21.

26 /// 

27 ///

28

1    The Court agrees that Plaintiff's retaliation claim against Defendant Whitcome is

2    unexhausted.  At issue are two grievances filed by Plaintiff concerning this claim.  In his response

3    to Defendants' statement of undisputed facts, Plaintiff contends that his first grievance was

4    improperly screened out but admits that his second grievance was denied as untimely.  See ECF

5    No. 37, pgs. 11-12.  While Plaintiff claims the first grievance was improperly handled, he makes

6    no such allegation in response to Defendants' motion as to the second grievance.  Nor does

7    Plaintiff allege or submit evidence to show that he challenged the timeliness determination.

8              3.     Defendant Brackett

9    Defendants assert:

10             A review of the grievances filed by Plaintiff in 2014 and 2015
          show that Plaintiff did not file a grievance regarding the search of his cell
11        by Defendant Brackett.  (DUF 35.)  Plaintiff filed several grievances,
          including a grievance regarding his disciplinary hearing, and the denial of
12        a sack lunch, but there are no records Plaintiff appealed the search of his
          cell or the confiscation of his legal property.  (DUF 35.)
13
     ECF No. 34-1, pg. 21.
14

15             In his opposition to Defendants' motion for summary judgment, Plaintiff admits

16   that he never sought administrative relief for his claim against defendant Brackett.  See ECF No.

17   37, pg. 12.  Plaintiff argues, however, that Defendant Brackett's conduct caused him to fear that

18   further acts of retaliation would occur if he did file a grievance.  See id.  Plaintiff describes the

19   following circumstances for his decision to not seek administrative relief:

20             On February 18, 2015, [Plaintiff] and his cellmate was [sic]
          escorted and placed in the shower.  Only [Plaintiff's] legal property was
21        taken for a "future search."  In what had been a series of retaliatory actions
          against [Plaintiff], [Plaintiff] was "warned" by Lieutenant Brackett, "this
22        is your last 'warning.'"  [Plaintiff] took this to mean that further
          harassment, harm, injury or death was imminent.  And after a series of
23        threats and warnings and out of pure fear for [Plaintiff's] safety, [Plaintiff]
          chose not [to] further write any more grievances. . . .
24
     ECF No. 37, pg. 12.
25

26   / / /

27   / / /

28   / / /

28

1          The Ninth Circuit has held that "the threat of retaliation for reporting an incident

2   can render the prison grievance process effectively unavailable and thereby excuse a prisoner's

3   failure to exhaust administrative remedies."  McBride v. Lopez, 807 F.3d 982, 987 (9th Cir.

4   2015).  There are subjective and objective components to test whether a prisoner's fear of

5   retaliation excuses non-exhaustion. See id.  For the subjective prong, the "prisoner must provide a

6   basis for the court to find that he actually believed prison officials would retaliate against him if

7   he filed a grievance."  Id.   Upon showing the subjective prong, the prisoner must then

8   demonstrate his belief was objectively reasonable, meaning "a reasonable prisoner of ordinary

9   firmness would have believed that the prison official's action communicated a threat not to use

10  the prison's grievance procedure and that the threatened retaliation was of sufficient severity to

11  deter a reasonable prisoner from filing a grievance."  Id.

12          Applying McBride, the Court finds Plaintiff has provided a basis for concluding

13  that Defendant Brackett's alleged threats deterred him from filing a grievance to satisfy the

14  subjective prong.  As alleged in the first amended complaint and discussed herein, Plaintiff

15  believed he had already been frequently subjected to a series of retaliatory acts by prison officials.

16  Additionally, Defendant Brackett allegedly confiscated Plaintiff's legal documents.  See ECF No.

17  37, pg. 12.  The circumstances of the alleged history of retaliation, Defendant Brackett seizing

18  legal materials, and Defendant Brackett admonishing Plaintiff that "this is your last 'warning,'"

19  demonstrate Plaintiff could have subjectively believed defendant Brackett would retaliate against

20  him for filing a grievance.

21          As to the objective prong, the Court finds that Plaintiff fails to demonstrate that a

22  reasonable prisoner of ordinary firmness would have understood Defendant Brackett as

23  communicating a threat not to use the prison's grievance procedures.  Plaintiff seems to string

24  together Defendant Brackett's actions with past incidents, involving different prison officials,

25  without explaining a retaliatory motive for Defendant Brackett.  The Ninth Circuit has held that

26  "warning" a prisoner constitutes a threat when the evidence shows that the defendant knew the

27  prisoner continually used the grievance system.  See Brodheim v. Cry, 584 F.3d 1262, 1270 (9th

28  Cir. 2009).  Defendant Brackett's "warning" was not explicitly threatening retaliation if Plaintiff

1   were to use the prison's grievance system, nor does Plaintiff offer evidence that Defendant

2   Brackett knew Plaintiff continually utilized the prison grievance system.  Even though the threat

3   need not explicitly reference the grievance system to deter a reasonable prisoner, prisoners cannot

4   "avoid filing requirements on the basis of hostile interactions with guards when the interaction

5   has no apparent relation to the use of the grievance system."  McBride, 807 F.3d at 988.  Because

6   Plaintiff fails to demonstrate Defendant Brackett threatened retaliation relating to Plaintiff's use

7   of the prison's grievance system, the Court finds Plaintiff fails to establish the objective prong of

8   McBride.  As a result, Plaintiff has not overcome his failure to exhaust his retaliation claim

9   against Defendant Brackett.

10          **C.      Qualified Immunity**

11          Government officials enjoy qualified immunity from civil damages unless their

12   conduct violates "clearly established statutory or constitutional rights of which a reasonable

13   person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

14   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

15   law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

16   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

17   injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

18   v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

19   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

20   context of the case, not as a broad general proposition. . . ."  Id.  "[T]he right the official is

21   alleged to have violated must have been 'clearly established' in a more particularized, and hence

22   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

23   official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

24   Thus, the final step in the analysis is to determine whether a reasonable officer in similar

25   circumstances would have thought his conduct violated the alleged right.  See id. at 205.

26   / / /

27   / / /

28   / / /

30

1    When identifying the right allegedly violated, the court must define the right more

2    narrowly than the constitutional provision guaranteeing the right, but more broadly than the

3    factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

4    Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

5    clear that a reasonable official would understand [that] what [the official] is doing violates the

6    right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

7    concludes that a right was clearly established, an officer is not entitled to qualified immunity

8    because a reasonably competent public official is charged with knowing the law governing his

9    conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

10   has alleged a violation of a clearly established right, the government official is entitled to

11   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

12   did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

13   also Saucier, 533 U.S. at 205.

14   The first factors in the qualified immunity analysis involve purely legal questions.

15   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

16   determination based on a prior factual finding as to the reasonableness of the government

17   official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

18   has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

19   555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

20   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

21   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

22   Although both the "clearly established right" and "reasonableness" inquiries are

23   questions of law, where there are factual disputes as to the parties' conduct or motives, the case

24   cannot be resolved at summary judgment on qualified immunity grounds.  See Lolli v. Cty. of

25   Orange, 351 F.3d 410, 421 (9th Cir. 2003); Wilkins v. City of Oakland, 350 F.3d 949, 955-56

26   (9th Cir. 2003); Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Martinez v. Stanford,

27   323 F.3d 1178, 1183-85 (9th Cir. 2003).

28   / / /

1                Once a court determines that "the law was clearly established, the immunity

2    defense ordinarily should fail, since a reasonably competent public official should know the law

3    governing [the official's] conduct."  Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Upon

4    establishing the violated right was clearly establish, however, the defendant then bears the burden

5    of establishing that the defendant reasonably believed the alleged conduct was lawful.  See

6    Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

7                As to whether the rights involved in this case were clearly established, Defendants

8    appear to concede they were.  According to Defendants:

9                     A prisoner's general right against retaliatory punishment was

10             clearly established well before Plaintiff was transferred to HDSP in 2014.
*E.g., Rhodes*, 408 F.3d at 569. Nor was there any question that Plaintiff

11             was engaged in protected conduct when he filed grievances. . . .[H]e was
subjected to the type of adverse action that would chill speech.

12             ECF No. 34-1, pg. 23.

13                As to reasonableness, Defendants also appear to concede they cannot meet their

14    burden of showing that they reasonably but mistakenly believed their conduct was lawful.

15    Defendants state: "Because the analysis of a retaliation claim is largely subjective, it's difficult to

16    determine at the [sic] whether reasonable officers in Defendants' positions would have known

17    they were violating the law."  Id.  The Court simply cannot find, based on the arguments

18    presented, that Defendants have met their burden as to qualified immunity.  To the contrary,

19    Defendants appear to concede qualified immunity is inapplicable in this case at this time.

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

# V.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion for summary judgment, ECF No. 34, be granted in part and denied in part as follows:

a.      Defendants' motion be granted as to the merits of Plaintiff's claims against Defendants Silva, Speers, and Ramsey, as Plaintiff cannot prevail on the merits as to the claims against these Defendants;

b.      Defendants' motion be denied as to the merits of Plaintiff's claims against Defendant Whitcome;

c.      Defendants' motion be granted as to Plaintiff's claims against Defendants Whitcome and Brackett, as well as the portion of his claim against defendant Joksch based on denial of a sack lunch, because such claims are unexhausted;

d.      Defendants' motion as to qualified immunity is denied;

e.      Defendants' motion be granted as to Defendant Hogan for failure to state a claim;

2.      This action will proceed on the following claims against Defendant Joksch:

a.      Plaintiff's Eighth Amendment claim against Defendant Joksch based on the cell move ordered on September 8, 2014; and

b.      Plaintiff's First Amendment retaliation claim against Defendant Joksch based on the cell move ordered on September 8, 2014.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 22, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE